**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Daniel Simmons

    v.                                                  Civil No. 14-cv-333-LM
                                         Opinion No. 2015 DNH 156

Wells Fargo Bank, N.A.


**O R D E R**

In a case that has been removed from the New Hampshire
Superior Court, Daniel Simmons, proceeding pro se, seeks to
enjoin Wells Fargo Bank, N.A. ("Wells Fargo") from selling his
home at a foreclosure sale and also seeks damages.  Simmons
claims that he is entitled to relief because Wells Fargo
breached the implied covenant of good faith and fair dealing by
starting to foreclose on his mortgage (Count I), and violated
federal mortgage-servicing regulations promulgated under the
Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. §§
2601-2617 (Count II).  Before the court is Wells Fargo's motion
to dismiss for failure to state a claim upon which relief can be
granted.  See Fed. R. Civ. P. 12(b)(6).  Simmons has not
responded.  For the reasons that follow, Wells Fargo's motion to
dismiss is granted.

## I.    The Legal Standard

Under Rule 12(b)(6), the court must accept the factual allegations in the complaint as true, construe reasonable inferences in the plaintiff's favor, and "determine whether the factual allegations in the plaintiff's complaint set forth a plausible claim upon which relief may be granted." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71 (1st Cir. 2014) (citation omitted).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Analyzing plausibility is "a context-specific task" in which the court relies on its "judicial experience and common sense." Id. at 679.

Because Simmons is proceeding pro se, the court is obliged to construe his complaint liberally.  See Erikson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (internal citations omitted) ("a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers").  However, "pro se status does not insulate a party from complying with procedural and substantive law.  Even under a liberal construction, the complaint must adequately allege the elements of a claim with the requisite supporting facts." Chiras v. Associated Credit Servs., Inc., 12-10871-TSH, 2012 WL

3025093, at *1 n.1 (D. Mass. July 23, 2012) (quoting Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997) (internal citation and quotation marks omitted)).

## II.  Background

The facts in this section are drawn from "the complaint, the documents attached to the complaint, and relevant public records."  See Foley, 772 F.3d at 68 (citing Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)).

In 2005, Simmons and his wife, who is not a party to this action, received a loan from American Home Mortgage ("AHM") and executed a promissory note in favor of AHM.  To secure repayment of the loan, the Simmonses gave a mortgage to Mortgage Electronic Registration Systems, Inc. ("MERS").  That mortgage provides, in relevant part:

> 9. Grounds for Acceleration of Debt.
> (a) Default.  Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:
> > (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment
>
> . . . .
>
> 18. Foreclosure Procedure.  If Lender requires immediate payment in full under paragraph 9, Lender may invoke the STATUTORY POWER OF SALE and any other remedies permitted by applicable law.

Addendum to Mot. to Dismiss (doc. no. 6) 8, 11 of 13 (emphasis omitted).  At some point, MERS assigned the mortgage to Wells Fargo.

In November of 2013, Simmons missed a mortgage payment.  He entered into a "payment consolidation" plan with Wells Fargo in December 2013.  Simmons failed to make the first payment required by that plan, due in February of 2014, because he was not informed of the payment due date.  In April 2014, Simmons submitted a completed "loss mitigation package" to Wells Fargo.  On June 11, 2014, Wells Fargo referred the mortgage to Harmon Law Office for foreclosure.

Thereafter, Wells Fargo sent Simmons a foreclosure notice.  Simmons then filed an "Ex Parte Complaint to Enjoin Foreclosure Sale" in the Merrimack County Superior Court.  In his state-court complaint, Simmons sought to enjoin a foreclosure sale that had been scheduled for July 11, 2014, and also asked for damages and legal fees.  Simmons claimed that by initiating foreclosure proceedings, Wells Fargo: (1) breached the implied covenant of good faith and fair dealing; and (2) violated a RESPA regulation that, under certain circumstances, prohibits a mortgagee from initiating a foreclosure after a mortgagor has submitted a loss mitigation application.

The state court enjoined the foreclosure sale and scheduled a hearing.  The parties continued that injunction by agreement.

4

Wells Fargo then removed the matter to this court and now moves
to dismiss Simmons's complaint.  Simmons has filed no response.

### III. Discussion

Wells Fargo argues that both of Simmons's claims should be
dismissed because neither states a claim upon which relief can
be granted.  The court begins with the RESPA claim Simmons
asserts in Count II and then turns to Count I, Simmons's claim
that Wells Fargo breached the implied covenant of good faith and
fair dealing.

A.  RESPA

The factual basis for Simmons's RESPA claim is Wells
Fargo's initiation of foreclosure proceedings.  The legal basis
is a bit difficult to discern because Simmons cites two
different provisions of the RESPA regulations in his complaint.
Those provisions appear in the section pertaining to loss
mitigation procedures, 12 C.F.R. § 1024.41.  That regulation, in
turn, is enforceable pursuant to 12 U.S.C. § 2605(f), see 12
C.F.R. § 1024.41(a), which allows individual borrowers such as
Simmons to sue for damages and costs.

The first provision Simmons cites in his complaint, 12
C.F.R. § 1024.41(f), describes the circumstances under which a
mortgage loan servicer may initiate the foreclosure process when
a borrower has submitted a loss mitigation application before

5

the servicer has made the first notice necessary to initiate foreclosure.  The second provision Simmons cites in his complaint, § 1024.41(g), describes the circumstances under which a servicer may foreclose on a mortgage when a borrower has submitted a loss mitigation application <u>after</u> the servicer has made the first notice necessary to initiate foreclosure.  Here, Simmons alleges that: (1) he "submitted [a] complete loss mitigation package to [Wells Fargo] in April 2014," Notice of Removal, Ex. 1 (doc. no. 1-1), at 6 of 8; (2) Wells Fargo referred his mortgage for foreclosure in June; and (3) he received a notice of foreclosure sometime thereafter.  Thus, Simmons has necessarily made a § 1024.41(f) claim, not a § 1024.41(g) claim.

Wells Fargo argues that Count II should be dismissed because: (1) Simmons has failed to adequately plead a RESPA violation; and (2) even if he had adequately pled a RESPA violation, his complaint seeks injunctive relief, which is not available under RESPA.  In its first argument, Wells Fargo contends that Simmons has failed to state a claim because his complaint does not allege sufficient facts to establish a violation of 12 C.F.R. § 1024.41(g).  But, as the court has already explained, Simmons's RESPA claim is based upon § 1024.41(f).  Thus, Wells Fargo's first argument is unavailing.  Accordingly, the court turns to Wells Fargo's second argument,

i.e., that Simmons's complaint must be dismissed because he seeks injunctive relief, which is unavailable under RESPA.

12 C.F.R. § 1024.41(a) states that "[a] borrower may enforce the provisions of [§ 1024.41] pursuant to section 6(f) of RESPA (12 U.S.C. 2605(f))."  That statute expressly provides that an individual may recover "actual damages," 12 U.S.C. § 2605(f)(1)(A), and "the costs of the action, together with any attorneys fees incurred in connection with such action," 12 U.S.C. § 2605(f)(3).[1]  Failure to allege actual damages justifies dismissal of a claim asserting a violation of 12 C.F.R. § 1024.41(f).  See Hogan v. Visio Fin. Servs., Inc., No. 15-10923, 2015 WL 3916084, at *3 (E.D. Mich. June 25, 2015); cf. Minson v. CitiMortgage, Inc., Civ. Action No. DKC 12-2233, 2013 WL 2383658, at *5 (D. Md. May 29, 2013) (dismissing RESPA claim under 12 U.S.C. § 2605(e) because plaintiff failed to allege any pecuniary loss that was attributable to the asserted RESPA violation).

In support of its argument for dismissal, Wells Fargo quotes the following portion of Simmons's complaint:

> The final orders I want the Court to issue are: Issue a temporary injunction against the defendant and their agents and assigns to remain in effect until the

---

[1] Simmons mentions the availability of damages in addition to actual damages in the event that a mortgage servicer engages in a pattern or practice of noncompliance with RESPA, but he makes no allegations that Wells Fargo is liable for engaging in any such pattern or practice.

> defendant completes the review of the loss mitigation
> application pursuant to 12 C.F.R. 1024, and supplies
> the plaintiff with proper written notices and
> explanations of the findings regarding the loss
> mitigation application per 12 C.F.R. 1024, as well as
> any applicable appeal available thereunder.

Notice of Removal, Ex. A (doc. no. 1-1), at 7 of 8.  While the

court agrees with defendant that "it is undisputed that

[Simmons] seeks to use his RESPA claim as a basis to enjoin

Wells Fargo's foreclosure," Def.'s Mem. of Law (doc. no. 5-1) 7,

the court cannot agree that injunctive relief is all that

Simmons seeks.  Elsewhere in his complaint, Simmons says:

> 8.(g) Some of the plaintiff's damages stem from
> frustration and distress caused by the defendant's
> noncompliance.  The plaintiff has supplied the
> defendant with every document that they requested and
> has re-submitted documents already supplied to the
> defendant multiple times. . . .

> 8.(h) The plaintiff has suffered nominal damages which
> are not insignificant by dealing with the frustrating
> process controlled by the defendant.  He has spent
> hours and hours submitting documents and faxing and
> copying and he will lose the value of all of that time
> and the money spent making copies and sending
> documents over and over again to the defendant if the
> defendant is allowed to [foreclose] prior to
> completing the loss mitigation process.

Notice of Removal, Ex. A (doc. no. 1-1), at 6-7 of 8.

Construing the complaint in the plaintiff's favor, as the court

must, it is clear that Simmons has at least attempted to assert

a claim for both emotional distress and nominal damages.

Courts are split as to whether emotional distress damages

are available as actual damages under 12 U.S.C. § 2605(f)(1)(A).

8

See Wenegieme v. Bayview Loan Servicing, No. 14 Civ. 9137(RWS), 2015 WL 2151822, at *2 n.3 (S.D.N.Y. May 7, 2015) (ruling that emotional stress does not qualify as actual damages for claim based upon alleged violation of 12 C.F.R. § 1024.41(f)); Moore v. Mortg. Elec. Registration Sys., Inc., 848 F. Supp. 2d 107, 122-23 (D.N.H. 2012) (noting a split of authority and ruling that language of 12 U.S.C. § 2605(f)(1)(A) encompasses emotional distress damages).  And, it is far from clear that nominal damages qualify as actual damages for the purpose of stating a claim made by an individual under 12 U.S.C. § 2605(f)(1), absent allegations of a pattern or practice of noncompliance.  See 12 U.S.C. § 2605(f)(1)(B) (allowing for "additional damages, as the court may allow" of up to $2,000 when the defendant engages in a pattern or practice of noncompliance); Carter v. Countrywide Home Loans, Inc., No. 3:07CV651, 2008 WL 4167931, at *9 (E.D. Va. Sept. 3, 2008) (characterizing pattern and practice damages as nominal damages).

Even assuming, however, that the damages Simmons claims are cognizable as actual damages under RESPA, his claim fails for another reason: it is not yet ripe.  See City of Fall River, Mass. v. F.E.R.C., 507 F.3d 1, 6 (1st Cir. 2007) (explaining that courts may consider the question of ripeness sua sponte). In Wenegieme, the plaintiffs asserted a claim that the defendants were liable to them for violating 12 C.F.R. §

1024.41(f), the same provision on which Simmons relies for his cause of action in Count II.  See 2015 WL 2151822, at *2.  Judge Sweet dismissed that claim on grounds that a § 1024.41(f) claim does not become ripe until the plaintiff has lost his or her property to foreclosure.  See id.  Judge Sweet's ruling, in turn, is consistent with the contingent nature of Simmons's claim that "he will lose the value of all of that time and the money spent making copies and sending documents over and over again to the defendant if the defendant is allowed to [foreclose] prior to completing the loss mitigation process."  Notice of Removal, Ex. A (doc. no. 1-1), at 7 of 8.  Because Simmons's RESPA claim is not yet ripe, Count II is dismissed without prejudice to Simmons re-filing it in the event he loses his property.  See 2015 WL 2151822, at *2.

   B.  Implied Covenant of Good Faith and Fair Dealing

   Simmons's remaining claim is that Wells Fargo breached the implied covenant of good faith and fair dealing by unreasonably exercising its contractual discretion to initiate the foreclosure process after he defaulted on his mortgage.  In New Hampshire, "every agreement [includes] an implied covenant that the parties will act in good faith and fairly with one another."  Birch Broad., Inc. v. Capitol Broad. Corp., 161 N.H. 192, 198 (2010) (citing Livingston v. 18 Mile Point Drive, Ltd., 158 N.H.

10

619, 624 (2009)).  The New Hampshire Supreme Court has observed that:

> there is not merely one rule of implied good-faith duty, but a series of doctrines, each of which serves a different function.  The various implied good-faith obligations fall into three general categories: (1) contract formation; (2) termination of at-will employment agreements; and (3) limitation of discretion in contractual performance.

Id. (citations omitted).  Simmons contends that this case falls within the third category.  That category functions to "prohibit behavior inconsistent with the parties' agreed-upon common purpose and justified expectations as well as with common standards of decency, fairness and reasonableness."  Id. (internal quotation marks omitted).

Here, the mortgage expressly provides that, in the event Simmons defaults on the mortgage, Wells Fargo may exercise the statutory power of sale.  Addendum to Mot. to Dismiss (doc. no. 6) 8, 11 of 13.  Thus, Wells Fargo's exercise of that right is consistent with the parties' "agreed-upon common purpose and justified expectations . . . ."  Id.  As such, it cannot serve as the basis for a claim for breach of the implied covenant of good faith and fair dealing.  See Rouleau v. U.S. Bank, No. 14-cv-568-JL, 2015 WL 1757104, at *3 (D.N.H. Apr. 17, 2015) ("a party does not breach the duty of good faith and fair dealing simply by invoking a specific, limited right that is expressly granted by an enforceable contract"); see also Moore, 848 F.

Supp. 2d at 129 ("the mere fact that some or all of the defendants exercised their contractual right to foreclose on the Moores after they defaulted on their mortgage payments does not amount to a breach of the implied covenant") (citations omitted).  Accordingly, Count I does not state a claim on which relief can be granted.

## IV.  Conclusion

For the reasons detailed above, Wells Fargo's motion to dismiss, document no. 5, is granted.  Count I is dismissed with prejudice; count II is dismissed without prejudice to Simmons's right to refile as described above.

SO ORDERED.

_____
Landya McCafferty
United States District Judge


August 11, 2015

cc:  Daniel D. Simmons, Esq.
     Michael R. Stanley, Esq.